IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA PLASTINO,<br><br>    Plaintiff,<br><br>  v.<br><br>WELLS FARGO BANK,<br><br>    Defendant.                     / | No. C 12-01037 CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Defendant Wells Fargo moves to dismiss the Complaint in this mortgage case on several grounds. Although the Court does not find that Plaintiff Lisa Plastino's claims are preempted or that she failed to tender, it agrees with Defendant that she has failed to state a claim. Accordingly, the Court DISMISSES the Complaint with leave to amend.

**I.    BACKGROUND[1]**

Plaintiff borrowed $700,000 from Defendant[2] in 2006. Notice of Removal (dkt. 1) Ex. A ¶ 7. Because of "financial issues related to the severe economic downturn," Plaintiff sought a loan modification from Defendant in February 2001. Id. ¶ 8. At that time, Plaintiff

---

[1] For the purposes of this Order, Plaintiff's allegations of material fact are taken as true and construed in the light most favorable to her. See Wyler-Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998)

[2] Plaintiff borrowed the money from World Savings Bank, which was subsequently purchased by Wachovia Mortgage, which was subsequently purchased by Defendant. Id. For ease of reference, this Order will refer to all of these entities as "Defendant."

earned a salary of $85,000 a year, but her employer had promised her an increase to a salary of $110,000 a year within three months. Id.

In March 2011, representatives of Defendant "qualified Plaintiff over the telephone" for a loan modification. Id. ¶ 9. Plaintiff explained her current and anticipated future salaries, and the representative told her that, as long as she provided a letter from her employer stating that she would be making $110,000 a year starting in May 2011, and included current pay stubs demonstrating her $85,000 a year salary, she met modification standards. Id. Plaintiff provided that information, and the remaining modification documents, and "was told to expect a loan modification package in the mail." Id. She was also told that Defendant would not accept any new payments until the trial modification began, and she relied on that representation to make no further payments. Id.

On April 11, 2011, Plaintiff received a letter from Defendant stating that she would be evaluated for a Home Affordable Modification Program (HAMP) loan modification and that "no foreclosure sale will be conducted and you will not lose your home during the HAMP evaluation." Id. ¶ 10. On April 15, 2011, Defendant requested additional information, and Plaintiff provided it, including a letter stating that Plaintiff would be making $110,000 a year as of May, 2011. Id. Plaintiff was also informed that a trustee sale scheduled for April 20, 2011 would be postponed while the loan modification was processed. Id.

On May 7, 2011, Plaintiff received another letter from Defendant, confirming that she had provided all necessary documentation and that "no foreclosure sale will be conducted and you will not lose your home during the HAMP evaluation." Id. ¶ 11.

On May 20, 2011, however, Plaintiff received a letter from Defendant informing her that Defendant was "unable to offer [her] a Home Affordable Modification." Id. ¶ 12. Immediately upon receiving the letter, Plaintiff called Defendant, and was informed that the decision to deny her a loan modification was based on an income amount of $85,000, not $110,000. Id. ¶ 13. She was told to restart the loan modification process. Id.

On June 15, 2011, Plaintiff was again qualified for a loan modification over the phone and submitted all the required documentation. Id. ¶ 14. The representative for Defendant

2

stated that a trustee sale would be continued indefinitely until the bank correctly processed her loan modification. Id. In May 2011, she was already making $110,000 a year, and informed Defendant of this, orally and in writing. Id. ¶ 15.

Between June 15 and August 1, 2011, Plaintiff called Defendant at least five times to check on the status of her loan modification. Id. ¶ 16. Each time she was told that the modification was under review and that she would not lose her home during the review process. Id. On August 11, 2011, a representative of Defendant called Plaintiff and asked her to resubmit pay stubs demonstrating her $110,000 salary. Id. ¶ 17. The representative, named Danny, told her that the loan modification was approved pending submittal of her latest pay stubs, and also that no foreclosure would occur. Id.

Plaintiff immediately faxed her latest pay stubs to Defendant, but when she called, at least five times, she could not reach Danny. Id. ¶ 18. Finally Plaintiff spoke with another representative, named Brandon, who stated that "based upon his review of the file history that Danny had failed to process the latest documents but that it was under review." Id.

A trustee sale of the property took place on August 22, 2011. Id. ¶ 19. Defendant initiated and prevailed on an unlawful detainer action in state court. See RJN (dkt. 9) Ex. L. Judgment was entered January 31, 2012. Id.

Plaintiff brought suit in state court and Defendant removed the case to this Court based on diversity jurisdiction. See Notice of Removal. Plaintiff brings five causes of action: (1) violation of California Business & Professions Code § 17200 ("UCL Claim"); (2) Stay of Eviction, Set Aside Sale, and Cancel Trustee's Deed; (3) Fraud and Deceit – Negligent Misrepresentation; (4) Fraud and Deceit – Intentional Misrepresentation; and (5) Breach of the Implied Covenant of Good Faith and Fair Dealing. See generally id. Ex. A. Defendant moves to dismiss. See generally Mot. (dkt. 8).

**II.      LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in a complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

3

"Detailed factual allegations" are not required, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In determining facial plausibility, whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

A complaint should not be dismissed without leave to amend unless it is clear that the claims could not be saved by amendment. Swartz v. KPMG LLP, 476 F.3d 756, 760 (9th Cir. 2007).

## III. DISCUSSION

Defendant moves to dismiss, arguing that: (A) all of Plaintiff's claims are preempted by the Home Owners Loan Act ("HOLA"); (B) Plaintiff's offer to tender is inadequate; and (C) Plaintiff fails to state a claim as to any of her causes of action. This Order addresses each argument in turn, concluding that only the last argument has merit.

### A. HOLA Preemption

Defendant argues that HOLA applies to it and operates to bar Plaintiff's claims. See Mot. at 2-5. Plaintiff does not dispute the first point,[3] but does dispute the second. See Opp'n (dkt. 12) at 6-9). As explained below, Plaintiff is mostly right.

Congress enacted HOLA "to charter savings associations under federal law, at a time when record numbers of homes were in default and a staggering number of state-chartered savings associations were insolvent." See Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1004 (9th Cir. 2008). HOLA and the Office of Thrift Supervision (OTS) regulations that

---

[3] Indeed, HOLA has previously been found to apply to Wells Fargo post-merger. See Nguyen v. Wells Fargo Bank, N.A., 749 F. Supp. 2d 1022, 1032-33 (N.D. Cal. 2010).

4

interpret it were a "radical and comprehensive response to the inadequacies of the existing state system" and "so pervasive as to leave no room for state regulatory control." Id. (internal quotation marks omitted). The OTS regulations explain that OTS "occupies the entire field of lending regulation for federal savings associations," and establish a framework for determining whether a state law is preempted. See 12 C.F.R. § 560.2(a), (b).

OTS enumerates certain types of state laws that are preempted, including "state laws purporting to impose requirements regarding . . . processing, origination, servicing sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(10). If the state law is one of the enumerated types, "the analysis will end there; the law is preempted." Silvas, 514 F.3d at 1005. If it is not, then the court is to determine "whether the law affects lending." Id. (internal quotation marks omitted). If it does, the law is presumed to be preempted, subject to the exceptions of section 560.2(c). Id. That section provides:

> (c) State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:
>
>     (1) Contract and commercial law;
>     (2) Real property law;
>     (3) Homestead laws specified in 12 U.S.C. 1462a(f);
>     (4) Tort law;
>     (5) Criminal law; and
>     (6) Any other law that OTS, upon review, finds:
>         (i) Furthers a vital state interest; and
>         (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

12 C.F.R. § 560.2(c). Courts are to focus not on the nature of the cause of action, but on the "functional effect upon lending operations of maintaining the cause of action." See Naulty v. GreenPoint Mortg. Funding, Inc., No. 09-1542, 2009 WL 2870620, at *4 (N.D. Cal. Sept. 3, 2009).

Defendant argues that, "[r]egardless of whether Plaintiff's claims are that Wells Fargo failed to provide a promised loan modification, or the conclusion that Wells Fargo promised to stay foreclosure proceedings pending loan modification, these allegations clearly involve the "processing, origination, sale or purchase of . . . mortgages" and "disclosure" and are

5

therefore preempted." Mot. at 4. This argument overreaches, as the language Defendant quotes pertains to "state <u>laws</u> purporting to impose requirements regarding . . . . Processing, origination, servicing, sale or purchase of . . . mortgages," 12 C.F.R. § 560.2(b)(10) (emphasis added), not to <u>allegations</u> that touch on such subjects. Moreover, Plaintiff's case is largely based on contract and tort; such laws are not preempted if, as here, they only incidentally affect lending. <u>Id.</u> "Courts have . . . interpreted <u>Silvas</u> to not preempt all state law causes of action arising out of loan modification and/or foreclosure proceedings, but only those that impose new requirements on the lender." <u>Rumbaua v. Wells Fargo Bank, N.A.</u>, No. 11-1998, 2011 WL 3740828, at *7 (N.D. Cal. Aug. 25, 2011).

Where plaintiffs's claims have centered on a bank's "inadequate disclosures of fees, interest rates, or other loan terms," or "inadequate notice of various rights and procedures during the foreclosure process," those claims have been preempted because they "would effectively impose requirements that banks include specific information in loan documents or provide specific notices during foreclosure." See <u>DeLeon v. Wells Fargo Bank, N.A.</u>, No. 10-01390, 2011 WL 311376, at *6 (N.D. Cal. Jan. 28, 2011). But where plaintiffs' claims have relied "on a general duty not to misrepresent material facts, and when application of the law does not regulate lending activity, California district courts have found that the claims are not preempted." <u>Id.</u> For example, where plaintiffs alleged

> that Wells Fargo falsely represented that it would complete a loan modification agreement and that no foreclosure sale would occur while the loan modification was pending, [but did] not seek to impose a substantive requirement that a federal savings bank must always complete a loan modification agreement once the modification process has started or that a federal savings bank can never execute a sale while a loan modification is pending. . . .[, Plaintiffs were invoking only] the general duty not to engage in fraud or express deception in a manner that only incidentally affects lending activities.

<u>Id.</u> Accordingly, the claim was not preempted. <u>Id.</u>; <u>see also</u> <u>Rumbaua</u>, 2011 WL 3740828, at *7 (same); <u>Susilo v. Wells Fargo Bank, N.A.</u>, 796 F. Supp. 2d 1177, 1186 (C.D. Cal. 2011) (same).

6

Here, Plaintiff's claims do not seek to impose additional requirements on Defendant,[4] nor do they depend on the contention that all homeowners are entitled to loan modifications. Instead, as in DeLeon, 2011 WL 311376, Plaintiff's claim is that Defendant made fraudulent misrepresentations that Plaintiff qualified for a loan modification based on her $110,000 salary, that it would not accept any new payments until the trial modification began, and that no foreclosure sale would be conducted while the loan modification process was underway, see Notice of Removal Ex. A ¶¶ 9-10. As Plaintiff's claims are based on allegations of material misrepresentations made by Defendant, they are not preempted, and this basis for dismissal fails (with the exception of part of the UCL claim, as discussed in footnote 4).

### B. Failure to Tender

Defendant next asserts that "Plaintiff's Failure to Tender the Debt is Fatal to Her Complaint." Mot. at 5.[5] "A tender is an offer of performance made with the intent to extinguish the obligation." Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 3d 575, 580 (1984) (internal citations and quotations omitted). "A tender must be one of full performance . . . and must be unconditional to be valid." Id. "It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." Id. at 578. "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." Karlsen v. American Sav. & Loan Assn., 15 Cal. App. 3d 112, 117 (1971).

//

---

[4] The exception is the UCL claim, which alleges that "Plaintiff was subjected to unfair, unlawful and fraudulent acts and practices" and is based in part on violations of California Civil Code §§ 2923.5 and 2923.6. See Notice of Removal Ex. A ¶¶ 25, 24. As those statutes would impose additional requirements on Defendant in the mortgage process, the UCL claim is dismissed as preempted to the extent that it depends on those statutes. See Giordano v. Wachovia Mortg., FSB, No. 5:10-cv-04661, 2010 WL 5148428, at *4 (N.D. Cal. Dec. 14, 2010) (finding preempted claims for violation of §§ 2923.5, 2924).

[5] Despite this sweeping proclamation, Defendant's argument is actually much narrower – it is that Plaintiff's second claim, to set aside the trustee sale, cancel the trustee deed and stay the eviction, as well as any remedy sought for her other claims that would undo the foreclosure sale, cancel the deed of trust, or restore her title to the property, should be dismissed. Id.

7

Here, the Complaint states:

> PLAINTIFF'S TENDER: Plaintiff hereby tenders through this Complaint to Defendants the amounts due and owing so that the claimed default may be cured and Plaintiff may be reinstated to all former rights and privileges previously agreed to by the parties. Plaintiff is ready, willing, and able to tender those necessary sums, if any, that the Court finds due and owing in order to avail itself of the Court's equity.

Notice of Removal Ex. A ¶ 22. Defendant argues that this is insufficient because it is a mere offer to tender and not an actual tender. See Mot. at 5-6 (citing Nguyen v. Calhoun, 105 Cal. App. 4th 428, 439, 440 (2003)).

The Court finds that an offer of tender is sufficient at the pleadings stage. See, e.g., Permito v. Wells Fargo Bank, N.A., No. 12-00545, 2012 WL 1380322, at **3, 7 (N.D. Cal. April 20, 2012) (citing Nguyen and stating that "in order to set aside a foreclosure, Plaintiff must allege that she offered to tender the full amount of the secured indebtedness or that she was excused from tendering"); Dubose v. Suntrust Mortg., Inc., No. 11-03264, 2012 WL 1376983, at *3 (N.D. Cal. April 19, 2012) (citing Nguyen and stating, "Plaintiff has not demonstrated an offer or ability to tender the amount owed."); Mikels v. Estep, No. 12-0056, 2012 WL 1231832, at *5 (N.D. Cal. April 12, 2012) ("for Plaintiff to maintain a cause of action for improper foreclosure, Plaintiff would have to allege his ability to tender the amount of debt"); see also Yazdanpanah v. Sacramento Valley Mortg. Group, No. C 09-02024, 2009 WL 4573381, at *7 (N.D. Cal. Dec. 1, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secure debt to maintain any cause of action for wrongful foreclosure.").[6] If the purpose of a tender requirement is to prevent a court "from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property," see Keen v. Am. Home Mortg. Servicing, Inc., 664 F. Supp. 2d 1086, 1101 (E.D. Cal. 2009) (internal quotation

---

[6] Quinteros v. Aurora Loan Services, 740 F. Supp. 2d 1163, 1169 (E.D. Cal. 2010), also cited by Defendant, see Mot. at 6, is distinguishable because there, the plaintiff only offered to pay arrearages on the mortgage and not the full balance.

8

marks omitted), then that purpose is served by requiring a plaintiff to properly allege tender. Plaintiff here has done so, and so the Court declines to dismiss on this basis.

### C. Failure to State a Claim

Defendant next moves to dismiss each of the individual causes of action – (1) violation of the UCL; (2) a claim to stay eviction proceedings, set aside the sale, and cancel the trustee deed; (3) the negligent and intentional misrepresentation claims; and (4) breach of the implied covenant of good faith and fair dealing – for failure to state a claim.

#### 1. UCL Claim

Defendant argues that Plaintiff's UCL claim should be dismissed both because it fails to allege sufficient facts to establish an unlawful, unfair or fraudulent business practice, and because Plaintiff fails to allege standing. See Mot. at 6-9. The Court does not reach the first argument because Defendant prevails on the second.

The Complaint alleges that "Defendants' misrepresentations regarding its ability and/or willingness to postpone the trustee sale to allow a modification constitute a failure to negotiate in good faith, violates Civil Code §§ 2923.5 and 2923.6, and was done in bad faith with willful and wanton disregard to the interests of Plaintiff." Notice of Removal Ex. A ¶ 24. It concludes, "As a direct, proximate, and foreseeable result of the Defendants' wrongful conduct, as alleged above, the Plaintiff was subjected to unfair, unlawful and fraudulent acts and practices" and "Plaintiff is entitled to relief." Id. ¶ 25. Plaintiff argues that she has alleged an injury in fact because she alleges the loss of real property. See Opp'n at 13 (citing Branick v. Downey Sav. & Loan Ass'n, 39 Cal.4th 235, 241 (2006)). The UCL claim does not actually allege the loss of real property, but even if it did, that would be insufficient.

To have standing under the UCL, Plaintiff must allege that she "suffered injury in fact and has lost money or property <u>as a result of</u> the unfair competition." See Cal. Bus. & Prof. Code § 17204 (emphasis added); see also Degelmann v. Advanced Med. Optics, Inc., 659 F.3d 835, 839 (9th Cir. 2011). Plaintiff has not alleged that she lost her home because of Defendant's actions.

9

As Defendant argues, according to the Notice of Default and Election to Sell Under Deed of Trust, RJN Ex. H,[7] Plaintiff was already $33,417.51 behind on her mortgage payments by December 28, 2010, and had not made a payment since April 2010. Mot. at 14. The first misrepresentation referenced in the Complaint was in March 2011, see Notice of Removal Ex. A ¶ 9, but at that point Plaintiff had not paid her mortgage for over ten months. Accepting the truth of Plaintiff's allegation (made in her intentional misrepresentation claim) that the March 2011 misrepresentation led her to "not [make] further payments on the loan," id. ¶ 42, the failure to make further payments is not plausibly the cause of Plaintiff's harm. Plaintiff has not alleged that she was otherwise able to pay off her debt in March 2011 and did not do so because of Defendant's representations; indeed, the Complaint states that she "was forced to pursue a loan modification" in February 2011, suggesting that she could not have paid off her debt in March 2011. See id. ¶ 8.

Similarly, in DeLeon, 2011 WL 311376, at *9, where a Wells Fargo representative allegedly told the plaintiff that no foreclosure sale would take place while the loan modification was pending, Judge Koh found that the plaintiff had not plausibly alleged that the misrepresentations caused her to lose her home, because "in order to cure the default and reinstate their loan, Plaintiffs would have been required to pay [a sum of money that] they have not alleged they could have done." Cf. Rumbaua, 2011 WL 3740828, at *4 ("Plaintiff concedes that she has not made a mortgage payment since November 2009, which belies her assertion that she stopped making payments in 'reliance' on this alleged statement.").

Because Plaintiff has failed to plausibly allege that she lost her home as a result of Defendant's actions, the Court dismisses the UCL claim for lack of standing. Plaintiff has leave to amend this claim.

//

---

[7] "Although, as a general rule, a district court may not consider materials beyond the pleadings in ruling on a Rule 12(b)(6) motion, one exception to this general rule is that a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1016 n.9 (9th Cir. 2012). The Notice of Default reflects that it was recorded in the Monterey County Recorder, see RJN Ex. H, and is therefore a public record; moreover Plaintiff has not objected to the Court's taking notice of the document or to the facts to be noticed.

### 2. Claim to Stay Eviction Proceedings, Set Aside Sale, Cancel Trustee Deed

Defendant also argues that Plaintiff's cause of action to stay eviction proceedings, set aside the sale, and cancel the trustee deed should be dismissed for failure to state a claim. See Mot. at 9-12. As an initial matter, the eviction proceedings have already taken place, see Opp'n at 5 ("After the Monterey County Court denied Plaintiff's exparte [sic] request for TRO, the eviction proceeded on February 15, 2012"), so there are no proceedings left to stay. In addition, the portion of the claim seeking to cancel the trustee deed appears to be not an independent cause of action, but a request for a particular remedy. See Albizo v. Wachoivia Mortgage, No. 11-02991, 2012 WL 1413996, at *10 (E.D. Cal. April 20, 2012); Bridgeman v. United States, No. 10-01457, 2011 WL 221639, at *17 (E.D. Cal. Jan. 21, 2011); Moreno v. Citibank, N.A., No. 09-5339, 2010 WL 1038222, at *4 (N.D. Cal. March 19, 2010).[8] Although Plaintiff's request to "cancel the trustee deed" is therefore dismissed, Plaintiff may include cancellation of the trustee's deed in her Prayer for Relief upon amendment. See Albizo, 2012 WL 1413996, at *10 (advising same).

This Order will therefore address only the portion of this claim asking the Court to set aside the sale. As to that request, the Complaint alleges that "Plaintiff is the rightful and actual owner of the Property," Notice of Removal Ex. A ¶ 28, that "Plaintiff is being threatened from [sic] being wrongly dispossessed and deprived of title to the above described real property as Defendant is proceeding to unlawfully, secretly and/or in bad faith submit the Property to a trustee sale," id. ¶ 29, and that "Although the notices of default and of trustee's sale appears valid on its face, it is invalid, void, and of no force or effect regarding Plaintiff's interests in the Property because the Notice of Trustee Sale was issued by a

---

[8] To the extent that Plaintiff intended to bring a cause of action for rescission under California Civil Code § 3412, as she argues in her Opposition, see Opp'n at 15, she does not reference that section in her Complaint, see Notice of Removal Ex. A ¶¶ 27-33; however, she may do so upon amendment.

11

1 purported trustee despite the fact that a loan modification had been approved[9] and the trustee
2 lacked any authority to foreclose," id. ¶ 31.

3 Defendant argues that a completed foreclosure sale cannot be set aside based on an
4 alleged oral agreement. Mot. at 9-10. Plaintiff responds that she is not alleging a breach of
5 an oral agreement, but is instead alleging that "the bank failed to process her loan
6 modification application, as it fraudulently stated it would, with the correct salary amount."
7 Opp'n at 13. Defendant explains, however, that even if Plaintiff's theory does not implicate
8 an oral agreement, it nonetheless involves a challenge that stretches beyond the foreclosure
9 proceeding itself. Reply (dkt. 13) at 4-5. Defendant cites to Nguyen v. Calhoun, 105 Cal.
10 App. 4th at 445 (internal citations omitted), in which a plaintiff asked the court to set aside a
11 foreclosure sale due to irregularity in the sale coupled with inadequate price; the court held
12 that "[t]o justify setting aside a presumptively valid foreclosure sale, the claimed irregularity
13 must arise from the foreclosure proceeding itself. A mistake that occurs outside (dehors) the
14 confines of the statutory proceeding does not provide a basis for invalidating the trustee's
15 sale." See also 6Angels, Inc. v. Stuart-Wright Mortgage, Inc., 85 Cal. App. 4th 1279, 1284
16 (2001) ("[a] successful challenge to the sale requires evidence of a failure to comply with the
17 procedural requirements for the foreclosure sale that caused prejudice to the person attacking
18 the sale").

19 To the extent that Plaintiff is challenging the bank's "[failure] to process her loan
20 modification application, as it fraudulently stated it would, with the correct salary amount,"
21 Opp'n at 13, this appears to be a challenge not to the statutory proceeding but to something
22 outside of it. It is also quite possible that the Court does not understand Plaintiff's claim, and
23 that she is arguing that the sale should be set aside for some other reason. In either case, the
24 cause of action is dismissed and Plaintiff may amend to more clearly articulate the basis for

---

[9] Notably, this statement is inconsistent with the allegations in the rest of the Complaint, which are not that a loan modification had been approved, but that, contrary to what Plaintiff had been promised, foreclosure took place while a loan modification was still being processed. See Compl. ¶¶ 18-19 (alleging that a representative named Brandon told Plaintiff that the loan modification was "under review," "However, a trustee sale of the property occurred.").

12

this cause of action, and specifically whether she is challenging Defendant's failure to comply with the procedural requirements of the sale.[10]

### 3. Negligent and Intentional Misrepresentation

#### a. Negligent Misrepresentation

Defendant next argues that Plaintiff has failed to state a claim for negligent misrepresentation because she has not alleged that Defendant owed her a duty of care. See Mot. at 12. This is correct. As with any negligence claim, the tort of negligent misrepresentation requires that Plaintiff allege a duty of care. See Eddy v. Sharp, 199 Cal. App. 3d 858, 864 (1988). Plaintiff alleges no duty of care, contending only that Defendant made knowingly false representations to Plaintiff with the intention of inducing her to act in reliance, and that Plaintiff reasonably relied on those misrepresentations to her detriment. See Notice of Removal Ex. A ¶¶ 34-40. This is insufficient.

The negligent misrepresentation claim is therefore dismissed for failure to allege a duty of care. Plaintiff may amend, provided she believes that she can plausibly do so, and can also plausibly address the detrimental reliance/damages issue discussed below as to intentional misrepresentation.

#### b. Intentional Misrepresentation

As to Plaintiff's cause of action for intentional misrepresentation, Defendant argues that Plaintiff "fails to adequately plead a representation of past or material fact, detrimental reliance, or damages." Mot. at 14.

---

[10] Defendant's argument that this claim is impermissible because it is a collateral attack on the judgment in the unlawful detainer action, see Mot. at 10 (citing Malkoskie v. Option One Mortgage Corp., 188 Cal. App. 4th 968, 976 (2010)), lacks merit. Although the California Court of Appeal found in Malkoskie, 188 Cal. App. 4th at 974, that an unlawful detainer judgment had claim preclusive effect in a subsequent action challenging the validity of Wells Fargo's title, that case is distinguishable. See, e.g., Johannson v. Wachovia Mortgage FSB, No. 11-02822, 2011 WL 3443952, at *10 (N.D. Cal. Aug. 5, 2011) (distinguishing Malkoskie on several applicable grounds, including that the plaintiff's claims "allege fraudulent conduct in extending a loan to her, and misleading her about whether or when they would foreclose on her home, not the propriety of their actual act of doing so"). Defendant's additional argument that a completed foreclosure sale is presumptively a final adjudication of the rights of the borrower and lender, see Mot. at 10-11, is also insufficient as even Defendant does not contend that the presumption cannot be rebutted.

13

The first point is unavailing. Although "[t]o be actionable, a . . . misrepresentation must ordinarily be as to past or existing material facts" and not "[p]redictions as to future events," Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 158 (1991), at least one of Defendant's representations pertained to an existing fact: that Defendant had a policy of not foreclosing while loan modifications were pending, id. ¶¶ 10, 11, 14, 16, 17. See DeLeon, 2011 WL 311376, at *8 ("statements by [Defendant's representative] assuring Plaintiffs that no foreclosure sale would occur while the loan modification was pending appear to be statements of fact regarding Wells Fargo's foreclosure policies").

Defendant is on firmer ground in arguing that the Complaint fails to plausibly allege detrimental reliance or damages. The Complaint alleges that "Plaintiff relied on the [unspecified] assertions by not making further payments on the loan," Notice of Removal Ex. A ¶ 42, that she "was induced to not make payments to her detriment. Had Plaintiff known the actual facts, they [sic] would not have taken such action," id. ¶ 46, and that "[a]s a proximate result of the fraudulent conduct of the Defendant as herein alleged, Plaintiff suffered damages in the form of the . . . [lost] property, loss of attorney's fees and expended costs" as well as other "damage[s] in a sum to be determined at trial," id. ¶¶ 47-48. In sum, Plaintiff argues that she relied on Defendant's misrepresentations, did not make further payments on her loan, and was therefore damaged.

But, as discussed above as to Plaintiff's UCL claim, the Notice of Default and Election to Sell Under Deed of Trust shows that Plaintiff was already $33,417.51 behind on her mortgage payments by December 28, 2010, and had not made a payment since April 2010. RJN Ex. H. The first alleged misrepresentation in the Complaint was in March 2011, see Notice of Removal Ex. A ¶ 9, but at that point Plaintiff had not paid her mortgage for over ten months. Accepting the truth of Plaintiff's allegation that the March 2011 misrepresentation led her to "not [make] further payments on the loan," id. ¶ 42, the failure to make further payments is not plausibly the cause of Plaintiff's harm. See also DeLeon, 2011 WL 311376, at *9; Rumbaua, 2011 WL 3740828, at *4.

14

Because Plaintiff has failed to plausibly allege detrimental reliance and damages, the Court dismisses the intentional misrepresentation cause of action. Plaintiff may amend if she can plausibly allege that Defendant's misrepresentations actually caused her harm.

### 4. Breach of the Implied Covenant

Finally, Defendant moves to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, arguing that "Plaintiff has not alleged any facts to show how Wells Fargo unfairly interfered with her right to receive the benefits of the deed of trust or mortgage note." Mot. at 15.

The Complaint alleges that "Implied in the deed of trust, mortgage note is a[n] implied covenant of good faith and fair dealing. Defendants agreed to a postponement of the Trustee Sale so that Plaintiff [could] enter into a loan modification. However, Defendants subsequently failed to begin the loan modification and postpone the trustee sale." Notice of Removal Ex. A ¶ 50. Plaintiff argues that it is not fatal to her claim that "there were no 'terms' that required the postponement of the trustee sale or a loan modification," but that "Defendants unfairly interfered with her right to receive the benefits of the standing contracts with Defendants." Opp'n at 19. This argument fails.

"The implied covenant operates to protect the express covenants or promises of [a] contract . . . [it] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of [the parties'] agreement." Perez v. Wells Fargo Bank, N.A., No. 11-02279, 2011 WL 3809808, at *18 (N.D. Cal. Aug. 29, 2011) (internal quotation marks omitted). Importantly, "to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated." Id. Plaintiff has pointed to no specific contractual provision that was frustrated. Indeed, her claim seems to allege not a violation of "the standing contracts with Defendants" but of the entirely separate promise Defendant allegedly made to postpone foreclosure while the loan modification was pending. That might form the basis for some cause of action, but not for breach of the implied covenant in the deed of trust and mortgage.

15

This claim is therefore dismissed. Plaintiff may amend if she can identify a specific contractual provision of the deed of trust and mortgage that was violated by Defendant's alleged bad faith.

**IV.    CONCLUSION**

For the foregoing reasons, the Court DISMISSES the Complaint for failure to state a claim, and allows Plaintiff leave to amend **within forty-five (45) days** of this Order.

**IT IS SO ORDERED.**

Dated: June 7, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE